IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

FREDDY VELASQUEZ SOTO,

          Plaintiff,

      v.

NANCY BERRYHILL,
Acting Commissioner of the Social Security
Administration,

          Defendant.
_____

Civ. No. 3:16-cv-01755-MC

OPINION AND ORDER

MCSHANE, Judge:

Plaintiff Freddy Velasquez Soto brings this action for judicial review of the

Commissioner's decision denying his application for supplemental security income ("SSI"). This

court has jurisdiction under 42 U.S.C. §§ 405(g) and 1383(c)(3).

On January 7, 2013, Soto filed an application for SSI, alleging disability as of August 23,

2001. After a hearing, the administrative law judge ("ALJ") determined Soto was not disabled

under the Social Security Act. Tr. 26-41.[1] Soto argues the ALJ erred in weighing the opinions of

several "other medical sources" and in find Soto's Intellectual Disability was not a medically

determinable impairment. Soto also argues new evidence mandates a "sentence six" remand.

Because the Commissioner's decision is based on proper legal standards and supported by

_____

[1] "Tr." refers to the Transcript of Social Security Administrative Record provided by the Commissioner.

1 – OPINION AND ORDER

substantial evidence, and because Soto fails to establish any new evidence justifies remanding this matter, the Commissioner's decision is AFFIRMED.

## **STANDARD OF REVIEW**

The reviewing court shall affirm the Commissioner's decision if the decision is based on proper legal standards and the legal findings are supported by substantial evidence in the record. 42 U.S.C. § 405(g); *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004). "Substantial evidence is 'more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Hill v. Astrue*, 698 F.3d 1153, 1159 (9th Cir. 2012) (quoting *Sandgathe v. Chater*, 108 F.3d 978, 980 (9th Cir. 1997)). To determine whether substantial evidence exists, we review the administrative record as a whole, weighing both the evidence that supports and that which detracts from the ALJ's conclusion. *Davis v. Heckler*, 868 F.2d 323, 326 (9th Cir. 1989). "If the evidence can reasonably support either affirming or reversing, 'the reviewing court may not substitute its judgment' for that of the Commissioner." *Gutierrez v. Comm'r of Soc. Sec. Admin.*, 740 F.3d 519, 523 (9th Cir. 2014) (quoting *Reddick v. Chater*, 157 F.3d 715, 720-21 (9th Cir. 1996)).

## **DISCUSSION**

The Social Security Administration utilizes a five-step sequential evaluation to determine whether a claimant is disabled. 20 C.F.R. §§ 404.1520 & 416.920 (2012). The initial burden of proof rests upon the claimant to meet the first four steps. If the claimant satisfies his burden with respect to the first four steps, the burden shifts to the Commissioner for step five. 20 C.F.R. § 404.1520. At step five, the Commissioner must show that the claimant is capable of making an adjustment to other work after considering the claimant's residual functional capacity (RFC), age, education, and work experience. *Id*. If the Commissioner fails to meet this burden, then the

claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4)(v); 416.920(a)(4)(v). If, however, the

Commissioner proves that the claimant is able to perform other work existing in significant

numbers in the national economy, the claimant is not disabled. *Bustamante v. Massanari*, 262

F.3d 949, 953-54 (9th Cir. 2001).

Soto, 45 years when he filed his application for benefits, spent the vast majority of his life

in prison. While he does not have any physical limitations, he alleges severe mental limitations.

There is little question that Soto has some issues interacting with others or being around large

groups of people. There was evidence in the record, pointed to by the ALJ, that Soto was

malingering. Ultimately, the ALJ determined Soto had no physical limitations but was limited to

simple tasks and work related decisions, and was limited to occasional interactions with

coworkers and the general public. Tr. 31. As noted, Soto argues new evidence, in the form of a

successful subsequent application for benefits, requires remanding this matter. Soto also argues

the ALJ erred in finding his intellectual disability was not a medically determinable impairment,

and in giving certain "other" opinions little weight. I address each argument in turn.

## I.     Soto's Subsequent Award of Benefits

After the Appeals Council denied Soto's request for review of the ALJ's adverse

decision, Soto filed another application for benefits with a protective filing date of September 1,

2016. The Commissioner granted that application. Soto argues that remand is appropriate under

42 U.S.C. § 405(g) because the onset date of his successful application "closely follows a denial

of benefits[.]" Soto Br. 8. Soto points to *Luna v. Astrue*, 623 F.3d 1032, 1035 (9th Cir. 2010) in

support of his argument. *Luna* is not analogous to the facts here. In *Luna*, the claimant was found

disabled one day after the denial of her original application. Here, the ALJ determined Soto was

not disabled through March 26, 2015. Tr. 40-41.[2] The Commissioner later found Soto disabled as of September 1, 2016, nearly 18 months after the ALJ's decision at issue here. While Soto's granted application is new evidence, it is not material as it does not relate to a time before, or even within one year of, the ALJ's decision. "If new and material evidence is submitted, the Appeals Council shall consider the additional evidence only where it relates to the period on or before the date of the administrative law judge hearing decision." 20 C.F.R. § 416.1470(b). Because the new evidence is not material, Soto's request for a remand under sentence six of § 405(g) fails.

## II.      Soto's Intellectual Disability

Soto argues the ALJ erred in finding at step 2 that his intellectual disability was not a medically determinable impairment. In support of this argument, Soto points to his IQ tests and scores. The ALJ rejected those IQ tests because the results did not indicate whether the results were deemed valid. Tr. 29. The ALJ pointed to ample evidence in the record of Soto malingering and determined the IQ results were not an accurate reflection of Soto's intellectual functioning. Tr. 29. Even assuming the ALJ erred at step 2, any error is harmless as the ALJ included Soto's limitations from his intellectual disability when forming Soto's RFC, where he limited Soto to simple tasks. *Lewis v. Astrue*, 498 F.3d 909, 911 (9th Cir. 2007).

The ALJ noted Soto's claimed mental limitations were not supported by the record. The ALJ pointed to numerous instances of malingering and benefits-seeking behavior. Tr. 32-33. Although not the only example in the record, the ALJ pointed to one examining psychologist who opined Soto "was either feigning symptoms to obtain medications or using his auditory hallucinations to minimize responsibility for his assaultive behaviors." Tr. 33. That same

---

[2] The Appeals Council denied review of the ALJ's decision, making the ALJ's decision the "final decision" of the Commissioner. *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1193 n.1 (9th Cir. 2004) (citing 20 C.F.R. § 404.981).

psychologist "noted that the claimant's malingering also appeared to be for the secondary gain of SSI benefits." Tr. 33.

The ALJ also referenced the report of a disability investigator who interviewed Soto in 2013. Tr. 34. The report clashed with Soto's alleged mental impairments. Despite alleging mental impairments that would prevent him from performing even simple tasks, Soto "appeared to enjoy describing the various crimes he had been convicted of committing and those that he had beaten. He did not have any difficulties in hearing or tracking the conversation and he provided [the investigator] with appropriate responses to all questions directed to him and maintained proper eye contact." Tr. 647. In fact, Soto's "recall was exceptional in regards to the various crimes and dates that he had perpetrated them. [SOTO] was also quite accurate about the dates he had been incarcerated and the institutions he served time in." Tr. 647. The ALJ noted the report "strongly suggests that the claimant's mental symptoms would not prevent all social interactions, and that the claimant would be capable of at least simple work." Tr. 34. In summarizing the record, the ALJ concluded:

> The substantial weight of the evidence shows that the claimant's mental symptoms would not prevent him from performing or sustaining simple work. As discussed above, the claimant has shown variable degrees of concentration in encounters [with] mental healthcare providers, but his reported hallucinations are not credible to the extent alleged, given that he has not been observed to respond to internal stimuli. The other credibility factors, including the claimant's daily activities, also tend to discount the claimant's allegations of disabling mental limitations in concentration. When the credibility factors including the strong evidence of malingering and the observations from the CDI report are considered with the evidence of symptom improvement, it is reasonable to infer that the claimant could handle occasional contact with coworkers and the public. In particular, the lack of mental difficulty in the crowded Starbucks from the CDI report shows that the claimant could handle an occasional level of public interaction.

Tr. 35.

The ALJ's determination that Soto could perform simple tasks is supported by substantial evidence in the record.[3]

### III.     The ALJ's Weighing of the "Other Source" Opinions

Soto argues the ALJ erred in giving little weight to the opinions of Qualified Mental Health Professionals ("QMHP") Cynthia Hilton and Paula Casner, and that of Josh Hurst, a mental health specialist and case manager at the Oregon Department of Corrections. The parties agree these are "other source opinions." The ALJ may reject "other source" opinions if the ALJ provides germane reasons for doing so. *Nguyen v. Chater*, 100 F.3d 1462, 1467 (9th Cir. 1996).

Cynthia Hilton, QMHP, was a corrections counselor who worked with Soto for 14 years. Hilton outlined Soto's aggressive behavior, concluding Soto's "deficits are such that it is unlikely that he would be able to function for any sustained period in a work setting." Tr. 296. In assigning Hilton's opinion little weight, the ALJ pointed to Hilton's comments to another case worker that "[Soto's] talk is a mixture of truth and fiction," and that she "doubt[ed] the accuracy" of Soto's alleged auditory hallucinations as "he may be using this in a manipulative manner to excuse his problematic behavior." Tr. 598. The ALJ also noted Hilton's opinion differed from those of the state agency psychiatrists, who concluded Soto could perform work with simple instructions and limited peer contact.[4] The ALJ provided germane reasons for assigning Hilton's opinion, to the extent it contains any functional limitations, little weight.

Paula Casner, QMHP, evaluated Soto on March 7, 2007 and wrote a letter with her opinion on July 13, 2013. Tr. 691. Casner noted when she evaluated Soto, he was using drugs

---

[3] Soto's argument that the ALJ failed to further develop the record is meritless. Substantial evidence in the record supported the fact that Soto could perform simple tasks and the ALJ did not have the duty to order further IQ tests. *Mayes v. Massanari*, 276 F.3d 453, 459-60 (9th Cir. 2001).

[4] The ALJ noted the state agency opinions were consistent with the record and evidence developed at the hearing. As noted, the ALJ made numerous references to the CDI report which strongly supported the fact that although Soto claimed he could not interact with the public, he appeared to show little limitations when observed by the investigator in the busy coffee shop. Tr. 36.

and she therefore diagnosed his drug issues. Tr. 691. She noted that upon Soto's release, he still had "significant psychiatric symptoms" but "is slowly doing a little better." Tr. 691. Casner noted Soto was aggressive towards others and concluded "It is clear he cannot work." Tr. 692. The ALJ gave Casner's opinion little weight as she interviewed Soto once in 2007 "and appears to have little contact with the claimant since this date, which indicates that she had a limited basis for her opinion." Tr. 38. The ALJ may consider the nature and extent of a relationship with the claimant in evaluating the weight given to a particular opinion. SSR 06-03p at *3. This is a germane reason for according Casner's opinion little weight. Casner examined Soto on one occasion 6 years before the alleged onset date. Casner provided one letter three months after Soto's release from prison in 2013. Tr. 692. In that letter, she simply states she "served as support for him when he was first out of prison[.]" Tr. 692. And while Casner noted Soto was aggressive towards others and "cannot tolerate being in a crowd of people and hears voices in crowded places," the ALJ noted the CDI report indicated Soto's limitations were less severe than alleged. Tr. 36. The RFC limited Soto to only occasionally working with others. Tr. 31.

The ALJ also noted Casner's statement that Soto "cannot work" is assigned no weight as it is an issue reserved for the Commissioner. A statement from a physician or other source that one is "disabled" or "unable to work" is not a medical opinion but rather an opinion on the ultimate determination of disability, which is an administrative finding reserved for the Commissioner. 20 C.F.R. § 404.1527(d)(1); *see also McLeod v. Astrue*, 640 F.3d 881, 884-85 (9th Cir. 2011) (treating physician's belief that claimant "could not work at all" is not binding on the ALJ). The ALJ provided numerous germane reasons for according Casner's opinion little weight.

Josh Hurst, M.Ed., is a mental health specialist and case manager at the Oregon

Department of Corrections. The ALJ concluded:

> Less than great weight is given to the opinion of Josh Hurst, M.Ed, an Oregon
> Department of Corrections mental health specialist and case manager. He reported
> that the claimant was able to follow 1-2 step instructions, attends appointments
> with reminders, but has a poor memory, and lacks the ability to remain focused.
> The evidence discussed throughout this decision supports finding that the
> claimant can follow 1-2 step instructions, and has the ability to maintain focus on
> simple work tasks. The opinion that the claimant lacks the ability to focus is
> inconsistent with the assessments of the State agency psychological consultants,
> which are given substantial weight. It also seems inconsistent with the claimant's
> ability to independently complete most daily activities. However, Mr. Hurst also
> reported that the claimant did not have marked impairments in two functional
> areas, which is given some weight as it is consistent with the other evidence of the
> claimant's mental functioning.

Tr. 37 (internal citations omitted).

Soto argues Hurst's opinion that he could perform most activities of daily living was

confined to the structured prison setting. But the ALJ provided numerous examples of evidence

suggesting Soto had the ability to focus on simple work tasks outside of prison. As noted, the

ALJ pointed out that Soto was able to focus in the crowded coffee shop when speaking with the

investigator. Soto's "recall was exceptional in regards to the various crimes and dates that he had

perpetrated them. [SOTO] was also quite accurate about the dates he had been incarcerated and

the institutions he served time in." Tr. 647. The ALJ noted Soto stated he made money as a tattoo

artist, and was able to manage his money and food stamps. Tr. 36. The ALJ's decision to reject

Hurst's opinion that Soto lacked the ability to focus on simple tasks was supported by substantial

evidence in the record.

The ALJ gave great weight to the agency opinions. Tr. 37. Substantial evidence supports

that decision. Although Soto argues another interpretation of the record is reasonable, that is not

a legitimate reason for overturning the ALJ's conclusions. *Gutierrez*, 740 F.3d at 523 (quoting

*Reddick*, 157 F.3d at 720-21) ("If the evidence can reasonably support either affirming or reversing, 'the reviewing court may not substitute its judgment' for that of the Commissioner.")).

## **<u>CONCLUSION</u>**

The ALJ's decision is free of legal error and supported by substantial evidence. The Commissioner's final decision is therefore AFFIRMED.

IT IS SO ORDERED.

DATED this 27th day of October, 2017.


_____/s/ Michael J. McShane_____
Michael McShane
United States District Judge